A89A1441. BUTLER v. THE STATE.
(386 SE2d 371)

DEEN, Presiding Judge.

The appellant, Carmen Butler, was indicted for trafficking in cocaine, possession of cocaine with intent to distribute, and possession of marijuana. The trial court directed a verdict of not guilty on the marijuana charge and the jury acquitted Butler on the trafficking charge, but Butler was convicted of possession of cocaine with intent to distribute, and this appeal followed.

On November 17, 1987, a DeKalb County detective received a tip from a confidential informant that a Hispanic female named Carmen was distributing cocaine and that a Hispanic male named Delgado was selling marijuana and cocaine at premises rented by Butler. The informant also claimed that former State Senator Julian Bond was involved with Carmen and with the distribution of cocaine. The informant had been told by an acquaintance of his who was close to Butler that large amounts of cocaine were in the house. The detective placed the residence under surveillance, and observed a woman carry some bags of garbage from the house to the curb for pick-up. When it was dark, he removed the garbage, took it to a nearby area, and sifted through the garbage in an attempt to corroborate the tip. He found post-marked letterhead envelopes from Julian Bond's office addressed to Butler and personal notes from someone who had signed the notes "JB." He also found several plastic sandwich bags with the corners cut out of the bags (the corners often are used to package grams of cocaine), several plastic bags containing marijuana residue and seeds

and a homemade pipe used for smoking marijuana with a small amount of marijuana residue in the bowl. The next day, the detective resumed his surveillance and observed several people drive up in late-model, expensive cars, stay a few minutes, and then leave, conduct which fit a pattern of drug sales.

The following day, the detective applied for and obtained a search warrant. In his affidavit given in support of the application, the detective recounted his surveillance of the residence based upon the tip of an informant, his observation of a moderate amount of vehicular traffic to the residence, and his discovery of the homemade pipe with a small amount of marijuana residue, along with several hand-rolled marijuana cigarette butts, in the garbage bags. The only person specified in the affidavit was a Daniel Delgado.

Several police officers participated in the execution of the search warrant. Butler was in the kitchen at the time, and four other people were in her bedroom, which was formerly a den that had been converted into a bedroom. Albert Macias, Elis Fernandez, and Trojanell Wilson were sitting on the bed, and Merle Sims was standing against the wall next to a dresser, which, according to Butler's daughter, usually contained only Butler's clothing. The top drawer of the dresser was partially open, revealing a large plastic bag that contained 117 grams of powder, 77 percent of which was pure cocaine. In a dark plastic file box on the fireplace hearth was another bag containing 165.7 grams of powder, 75 percent of which was pure cocaine. On the nightstand beside the bed, the police found a bank deposit slip bearing Butler's name and a .38 caliber revolver. A triple-beam Ohaus scale and funnel were on the top of the dresser, and a spoon and a strainer were in the middle of the bed. The street value of the cocaine was estimated at between $100,000 and $120,000.

Also in the house at the time of the search were several teenagers in another bedroom, an adult woman asleep in the basement, and a man asleep on the couch in the living room. None was found to be connected with the drugs. Macias and Fernandez were charged along with Butler, but disappeared after paying a cash bond. Sims, who was also indicted, testified at trial that Butler had worked for his telecommunications business on a commission basis from March to November 1986, during which time he had paid her approximately $7,000 to $8,000. The vehicles he had seen Butler drive included a later model Camaro (or something similar) and a Cadillac.

Butler's daughter testified that Butler always had nice clothes, and that she drove a 1986 Firebird and a 1986 Cadillac, both of which were leased. She never knew Butler to have owned a new Peugot, but she identified Butler's signature on a sales receipt showing Butler's purchase of a 1986 Peugot for $28,331.20. She also testified that Butler travelled frequently, often with her boyfriend, Julian Bond, who

paid for the trips. *Held*:

1. Butler contends that the trial court erred in denying her motion to suppress, because the search warrant was not supported by probable cause. Specifically, Butler asserts that the detective's affidavit failed to show (1) any basis of the reliability of the informant and (2) the basis for the detective's conclusory statement that the residue in the homemade pipe was marijuana.

In determining whether probable cause supported issuance of a search warrant, a "totality of the circumstances" test is employed. " 'The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis . . . for conclud(ing)" that probable cause existed.' " *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984), quoting from *Illinois v. Gates*, 462 U. S. 213, 238 (103 SC 2317, 76 LE2d 527) (1983).

Corroboration of the information given by an informant may provide a substantial basis for finding probable cause, despite deficiencies in the showing of the informant's veracity, reliability, or basis of knowledge. *Curry v. State*, 255 Ga. 215 (1) (336 SE2d 762) (1985); *Mincey v. State*, 180 Ga. App. 898 (350 SE2d 852) (1986). In the instant case, however, although it was obtained during an effort to corroborate the informant's tip, the primary information given in the affidavit to support the issuance of a search warrant was the detective's own discovery of marijuana in the garbage. The affidavit does not recount all the information given by the informant. Reference to the tip in the affidavit merely explained how the detective came to place Butler's house under surveillance and check out the garbage. The detective's statement in the affidavit, i.e., that inside the garbage bag "was a homemade pipe with a small amount of marijuana in the bowl . . . [and] several 'roaches,' handrolled marijuana cigarette butts," provided substantial basis for concluding that probable cause existed. Compare *State v. Casey*, 185 Ga. App. 726 (365 SE2d 878) (1988), where the affiant officer's conclusory statement that he had seen marijuana *residue* was insufficient because it did not indicate how the affiant could distinguish marijuana residue from tobacco residue.

2. We reject Butler's contention that she was entitled to a directed verdict of acquittal based on the equal access rule. Whether the evidence of equal access was sufficient to rebut the presumption of possession arising from the discovery of cocaine in Butler's bedroom was a question properly left to the jury, under the totality of the evidence in this case. *Gumina v. State*, 166 Ga. App. 592 (1) (30

SE2d 37) (1983). "The totality of the evidence was sufficient to connect defendant to the possession of the drugs, even though the evidence would have authorized a finding that others had equal access to the drugs. [Cit.]" *Kelly v. State*, 184 Ga. App. 337, 340 (361 SE2d 659) (1987).

3. The investigating detective was allowed to testify over objection that in conducting his surveillance, he "was looking for evidence to verify that an Hispanic female named Carmen lived at the location possibly with an Hispanic Male named Daniel who may or may not be related to her." Butler contends that the trial court should have granted her motion for mistrial because this testimony, explaining the officer's conduct when it was not at issue, was inadmissible under *Momon v. State*, 249 Ga. 865 (294 SE2d 482) (1982), and *Teague v. State*, 252 Ga. 534 (314 SE2d 910) (1984). However, the admission of this testimony, even if error, was harmless, because other admissible evidence established the fact that Carmen Butler resided at the house under surveillance. See *Noles v. State*, 172 Ga. App. 228 (5) (322 SE2d 910) (1984).

*Judgment affirmed. Birdsong, and Benham, JJ., concur.*

DECIDED SEPTEMBER 5, 1989.

*Tony L. Axam*, for appellant.

*Robert E. Wilson, District Attorney, Barbara B. Conroy, R. Stephen Roberts, Assistant District Attorneys*, for appellee.